IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RANDY L. BRAMMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-707-PJC |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Claimant, Randy L. Brammer ("Brammer"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits and supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Brammer appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Brammer was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

**Claimant's Background**

Brammer was 53 years old at the time of the hearing before the ALJ on March 15, 2011. (R. 22). He had completed tenth grade. *Id.*

Brammer had not worked since June 12, 2009. *Id.* One of his biggest problems was his lower back. (R. 23). He testified that he had three bulging disks due to a car wreck on April 22, 2007. (R. 23-24). His pain was located right above the belt line, but he also had spasms and pain into his hips or legs. (R. 24). He said that the pain could go all the way to his feet in both legs. *Id.* He said that happened at least twice a day. *Id.* He described his back pain as constant and sharp, "almost like a pin going through it." (R. 25).

Brammer testified that he also had neck pain. *Id.* He said turning his head in certain directions caused spasms, and other positions caused dizziness and a burning sensation that went down his face and sometimes behind his ears. (R. 25-26). He said he experienced neck pain every day, and he described it as a sharp stabbing pain. (R. 26).

Brammer said that he had problems with his left hand, which he described as swelling and inability to grasp. *Id.* He had trouble holding onto things with his left hand and items such as a glass might slip. (R. 26-27).

Brammer said that he had interrupted sleep every night. (R. 27). He would sleep for a few hours, then wake up and stay awake for a few hours, and this pattern would repeat. *Id.* He had this problem most of the time. *Id.* He would lie down during the day for three or four hours "to get some relief from sitting." *Id.*

Brammer estimated that he could stand for about 20 minutes before he would be uncomfortable. (R. 28). He could walk about a block before he would need to stop and take a break. *Id.* If he had to lift something from the ground, he thought he could only lift ten pounds

or less. *Id.* He could probably only lift ten pounds once or twice in a day. *Id.* He could sit in a comfortable chair for about 30 minutes before needing to change positions. *Id.* After 30 minutes of sitting, his back would start throbbing, or it might switch to his hips, and he would need to move around and stand up. (R. 28-29). He would then lie down for a 15 or 20 minutes. (R. 29). It was common for him to need to change positions throughout the day. *Id.* He had problems reaching overhead because looking up would cause him to get dizzy. *Id.* He would then have problems with his shoulders if he lifted his hands up for too long. *Id.* It would be difficult for him to lift his hands, and then he could only keep them up for a few seconds. *Id.* He had difficulty climbing stairs. (R. 30). He could make it up one flight of stairs, but it would be a struggle. *Id.* He still drove, but only for about 30 minutes, partly due to the sitting. *Id.* He thought that his longest trip in the previous couple of years had been 45 minutes, and he had not been out of state in that time. (R. 32).

Brammer tried to do most of the cooking for his mother, who was in the 2007 car accident with him and was disabled. (30). He cooked simple things like soup. (R. 31). He tried to do the laundry once a week. (R. 30-31). He had trouble doing that because of two steps between his house and the garage. (R. 31). He did not do any lawn work, and he was not able to push a lawn mower. *Id.* They had a small rug in their living room, and he vacuumed it every once in a while. *Id.* He spent his time listening to music, watching television, and reading. (R. 32). Brammer's only medications at the time of the hearing were Tramadol and aspirin. *Id.*

Brammer apparently had chiropractic care for lower back pain from November 2007 until October 2008. (R. 178-94). An information sheet he completed for this care indicated it was due to a car accident on April 22, 2007. (R. 181). An MRI was done on September 26, 2008. (R. 191-92). The MRI found broad disc bulging at the L3/L4 and L4/L5 levels. (R. 192). The report

3

described details, including foraminal narrowing. *Id.*

Brammer presented to Morton Comprehensive Health Service ("Morton") on September 12, 2008 to establish care. (R. 199). He reported that he had been in an accident in April 2007 and had experienced intermittent low back pain since that time. *Id.* The pain had become steady in the months before this appointment. *Id.* He said that he was having trouble working and was working only part time. *Id.* On examination, he had "a large amount of tenderness to palpation over the origin of the left sciatic nerve." *Id.* He was prescribed Flexeril and Lodine. *Id.* At a follow-up appointment on October 7, 2008, Brammer described the pain as intermittent. (R. 198). On examination, Brammer had mild tenderness in the lumbosacral area and his range of motion was somewhat limited. *Id.* He was wearing a back brace. *Id.*

Brammer saw William C. Clark, M.D. at Tulsa Bone & Joint on January 12, 2009. (R. 208-09). The history said that Brammer had fairly significant back pain since April 2007. (R. 208). He continued to work part-time as a rigger. *Id.* During the examination, Brammer stood comfortably and was able to walk about the room without difficulty, including toe and heel walking. *Id.* He had mild tenderness to palpation over the lower lumbar spine. *Id.* Dr. Clark's assessment was multi-level degenerative changes, more pronounced at L4/L5, with no evidence of radiculopathy. (R. 209). He recommended continued conservative care, including a transforaminal injection and physical therapy. *Id.* Dr. Clark did the injection on January 21, 2009. (R. 210). At a follow-up appointment on January 30, 2009, Brammer reported that the injection did not provide any relief. (R. 212). His examination was unchanged. *Id.* Dr. Clark recommended that Brammer pursue physical therapy and attempt to get the films from the previous MRI to him for review. *Id.*

Brammer was treated at Accident Injury Diagnostic & Treatment Center from February 2009 to June 2009.  (R. 222-38).

Agency consultant Patrice Wagner, D.O. examined Brammer on December 22, 2009.  (R. 240-44).  On examination, Brammer moved all extremities well.  (R. 241).  He had pain in the lumbar spine with range of motion testing of both legs.  *Id.*  He also had pain with the range of motion testing of his lumbar spine.  *Id.*  Straight leg raising was negative, and toe and heel walking was normal.  *Id.*  His gait was stable.  *Id.*  Dr. Wagner's assessment was degenerative joint disease of the lumbar spine.  *Id.*  Dr. Wagner's attached Range of Joint Motion Evaluation Chart showed that all range of motion was within normal limits.  (R. 242-43).  The Backsheet showed pain on range of motion testing of the lumbar spine, but range of motion and all other criteria were within normal limits.  (R. 244).  For Brammer's cervical spine, the Backsheet reflected that all range of motion testing and other criteria were normal, and there was no pain on movement.  *Id.*

Agency consultant John Pataki, M.D. completed a Physical Residual Functional Capacity Assessment dated April 23, 2010.  (R. 246-53).  Dr. Pataki's opinion was that Brammer was limited to work at the light exertional level.  (R. 247).  In the space for narrative explanation, he noted the September 2008 MRI.  *Id.*  He also summarized Dr. Clark's January 2009 physical examination of Brammer.  *Id.*  He briefly summarized Dr. Wagner's examination and report.  (R. 247-48).  He mentioned Brammer's reported activities of daily living.  *Id.*  For postural limitations, Dr. Pataki said that Brammer could frequently climb and balance, but should only occasionally stoop, kneel, crouch, or crawl.  (R. 248).  He found that no other limitations were established.  (R. 249-53).

**Procedural History**

Brammer filed applications in June 2009, seeking disability insurance benefits under Title II, and supplemental security income benefits under Title XVI, 42 U.S.C. §§ 401 *et seq*. (R. 110-16). Brammer alleged onset of disability as June 13, 2009. (R. 113). The applications were denied initially and on reconsideration. (R. 44-51, 62-67). A hearing before ALJ Lantz McClain was held March 15, 2011. (R. 19-38). By decision dated April 15, 2011, the ALJ found that Brammer was not disabled from his alleged date of onset of disability through the date of the ALJ's decision. (R. 10-16). On May 27, 2011, the Appeals Council denied review of the ALJ's findings. (R. 1-5). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant

(detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.*

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

### Decision of the Administrative Law Judge

The ALJ found that Brammer met insured status requirements through the date of the decision. (R. 10). At Step One, the ALJ found that Brammer had not engaged in any substantial gainful activity since his alleged onset date of June 12, 2009. *Id.* At Step Two, the ALJ found

---

suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

that Brammer had severe impairments of degenerative disc disease and bulging discs at L3/L4 and L4/L5.  *Id.*  At Step Three, the ALJ found that Brammer's impairments did not meet a Listing.  (R. 11).

The ALJ determined that Brammer had the RFC to perform light work with normal breaks.  (R. 11).  Brammer could  only occasionally stoop, kneel, crouch, or crawl, and could only frequently climb or balance.  *Id.*  At Step Four, the ALJ found that Brammer was unable to perform any past relevant work.  (R. 13).  At Step Five, the ALJ found that there were significant numbers of jobs in the national economy that Brammer could perform, taking into account his age, education, work experience, and RFC.  (R. 14).  Therefore, the ALJ found that Brammer was not disabled from June 12, 2009 through the date of his decision.  (R. 14).

## Review

Brammer asserts only one point of error.  He argues that the ALJ failed to properly evaluate his credibility regarding pain.  Regarding the issue raised by Brammer, the undersigned finds that the ALJ's decision is supported by substantial evidence and complies with legal requirements.  Therefore, the ALJ's decision is affirmed.

Credibility determinations by the trier of fact are given great deference.  *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations].  Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart,* 287 F.3d 903, 910 (10th Cir. 2001).  In evaluating credibility, an ALJ must give specific reasons that are closely and affirmatively linked to substantial evidence.  *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186.

"[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

Brammer argues that the ALJ did not discuss the factors in SSR 96-7p and that the ALJ's assessment is therefore not sufficient. The undersigned finds that the ALJ's credibility assessment was sufficient because it gave specific reasons that were closely and affirmatively linked to substantial evidence. (R. 12-13). After an introductory statement that he did not find Brammer to be entirely credible, the ALJ began explaining the medical evidence that contradicted Brammer's testimony. (R. 12). He noted that On September 12, 2008, Brammer had denied any paresthesia or weakness in his legs. *Id.* This was in contrast to his hearing testimony, as summarized by the ALJ, that he did have pain going down his legs. (R. 12). Statements of the claimant that are reflected in medical records that conflict with hearing testimony obviously undercut credibility.

The ALJ noted that in another medical record on October 7, 2008, Brammer stated that he worked as a drummer. *Id.* This statement could also have been viewed by the ALJ as conflicting with Brammer's hearing testimony.

The ALJ then noted that there was a three-month gap from October 2008 to January 2009 in which it appears that Brammer did not seek treatment for his allegedly disabling condition. *Id.* A gap of time in seeking treatment is also relevant to the question of credibility because the extensiveness of the claimant's efforts to obtain relief is a legitimate specific reason for a finding of credibility. *Kepler*, 68 F.3d at 391; *Hagar v. Barnhart*, 102 Fed. Appx. 146, 148 (10th Cir. 2004) (unpublished) (ALJ was entitled to consider that, if the claimant's symptoms were as debilitating as asserted, she would have sought additional treatment). The ALJ later noted that there was no evidence that Brammer had sought any treatment after June 2009. Again, this

9

evidence of lack of pursuit of treatment supported the ALJ's finding that Brammer was less than fully credible.

The ALJ then briefly summarized Dr. Clark's examination of January 12, 2009, including that it was specifically noted that there was no evidence of radiculopathy. (R. 12-13). The contrast between this medical finding and Brammer's testimony was another specific, legitimate reason to find him less than fully credible. *See* 20 C.F.R. § 404.1529(c)(4) ("we will evaluate your statements in relation to the objective medical evidence").

The ALJ also rightly questioned Brammer's testimony that he was taking Tramadol at the time of the hearing. None of the medical records before the ALJ included a prescription for Tramadol. Thus, Brammer's testimony was in contrast to the records that were available to the ALJ.

After these sections of his decision in which he gave specific and legitimate reasons that were tied to specific evidence, the ALJ then gave a summary of his credibility finding. (R. 13). He mentioned that Brammer's physicians had not placed any restrictions on him that were inconsistent with light work. *Id.* He found that Brammer's activities of daily living were consistent with light work. *Id.* He again reiterated that Brammer had not sought treatment since June 2009 and questioned whether Brammer was truly taking prescription pain medication. *Id.* The ALJ's discussion complied with legal requirements and was supported by substantial evidence.

In keeping with his argument that the ALJ failed to go through the points of SSR 96-7p, Brammer reviews each factor in his brief. Plaintiff's Opening Brief, Dkt. #18, pp. 6-8. Brammer argues that the ALJ failed to go through each factor, giving citations to the record and explaining the weight that he gave to each. *Id.* This is simply not the standard in this Circuit, as illustrated

by a recent unpublished case. *Polson v. Astrue*, 2013 WL 238849 *1-2 (10th Cir.) (unpublished). The court in *Polson* explained again the law of our Circuit since 2000 that "[s]o long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Id.*, *quoting Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's credibility evaluation in *Polson* is remarkably similar to the ALJ's analysis in Brammer's case. The Tenth Circuit approved the credibility evaluation because the claimant had failed to seek treatment for a long period of time and her physicians had not placed any functional limitations on her that precluded sedentary work. *Polson*, 2013 WL 238849 at *2. The ALJ found the claimant had restricted activities of daily living, but those had not been placed on her by medical providers. *Id.*

As was true in *Polson*, the ALJ's credibility assessment here was adequate. Brammer's arguments to the contrary simply are not persuasive. The ALJ's assessment gave specific, legitimate reasons that were closely and affirmatively tied to substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. The decision is **AFFIRMED**.

Dated this 8th day of February 2013.

_____
Paul J. Cleary
United States Magistrate Judge